IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM ROUSER,

    Plaintiff,                    No. CIV S-07-1107 JAM GGH P

    vs.

K. RUTHERFORD, et al.,

    Defendants,               FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court are the parties' cross motions for summary judgment. Docs. 32, 59.

        Plaintiff is not an unfamiliar figure to the undersigned or the Eastern District in general. Commencing in 1993, in an action still ongoing before the district judge (93-767 LKK GGH), plaintiff brought an action claiming that he was hindered in the practice of his Wiccan religion. Since that time, plaintiff has brought no less than seven actions either again claiming a violation of his First Amendment/RLUIPA rights, or that untoward actions have occurred to him as a result of his litigation notoriety, or some combination of both. There is truth to the statement of defendants' counsel set forth in the Points and Authorities:

1

> Rouser cannot manipulate prison official's ability to investigate and prosecute criminal activities–vital to maintaining a prison's safety and security– merely by cloaking his nefarious conduct under the Wicca umbrella. Otherwise any investigation and disciplinary process would be susceptible to an inmate's claim that his activities are immune from adverse consequences, merely because he uses religion as a shield.

On the other hand, it is possible that the thorn-in-the-side plaintiff can be the victim of conspiracies under the cloak of a relatively closed and frustrated prison system. Fortunately, the conflicting possibilities will have to await adjudication in yet another inevitable litigation in that plaintiff's due process claims are barred as a matter of law, and plaintiff's completely unsupported retaliation and miscellaneous other assertions do not warrant further scrutiny.

II. Background

This case is proceeding on the amended complaint (AC), filed on September 11, 2007, against eight defendants who were employed at Mule Creek State Prison (MCSP). The basis of plaintiff's complaint was that his due process rights were violated when he was found guilty of a Rules Violation Report (RVR) that resulted in loss of credits and plaintiff was transferred to a different prison. However, the RVR finding has not been reversed, invalidated or expunged pursuant to Heck v. Humphrey, 512 U.S. 477 (1994). Nevertheless, the court ordered service on the defendants as plaintiff alleged violations of the Religious Land Use and Institutionalized Persons Act (RLUIPA)[1], a First Amendment Free Exercise claim and other claims[2] that were intertwined with the underlying disciplinary hearing claims.

After reviewing plaintiff's motion for summary judgment and his opposition to defendants' motion for summary judgment, it is abundantly clear that the majority of plaintiff's

---

[1] Plaintiff is a follower of the Wicca religion.

[2] Plaintiff's complaint contains what could be construed as various other claims scattered throughout. For example, plaintiff simply states in a conclusory statement that the disciplinary results from the RVR violated the Eighth Amendment, but provides no factual support. Plaintiff's motion for summary judgment provides very little support for these claims though defendants' motion for summary judgment has addressed the majority of the possible claims.

claims involve allegations of due process violations in his RVR hearing. Plaintiff takes issue with the use of confidential informants, alleged tampering with recorded phone transcripts and allegations that defendants falsified reports and provided perjured testimony. Plaintiff seeks monetary damages for these actions.

All claims involving the practice of religion have little bearing on this case, especially as plaintiff makes no allegations that his ability to practice his religion was ever burdened. The defendants were either involved in the investigation that led to the RVR, took part in the hearing concerning the RVR, or were supervisors. As will be discussed below, the undersigned will address plaintiff's claims involving RLUIPA, the First Amendment and other miscellaneous claims, but all of plaintiff's claims related to the RVR hearing are Heck barred.

III. Motion for Summary Judgment

Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Fed. R. Civ. P. 56(c) is met. "The judgment sought should be rendered if . . . there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

\\\\\

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

Undisputed Facts

Plaintiff did not respond to defendants' undisputed facts, other than a blanket statement that he disputes nearly all the facts. The court has attempted to sift through plaintiff's undisputed facts in his motion for summary judgement to set forth the undisputed facts.[3] The following of defendants' undisputed facts (DUF) are either not disputed by plaintiff, or following the court's review of the evidence submitted, have been deemed undisputed:

At all relevant times plaintiff was incarcerated at MCSP. DUF #6. Defendant Rutherford was a Correctional Sergeant of the Investigative Service Unit (ISU) at MCSP. DUF #7. Defendants Hillard, Kowalczyk and Sauceda were officers in ISU at MCSP. DUF #8. Defendant Chamberlin was a Correctional Lieutenant and the Senior Hearing Officer at plaintiff's RVR hearing. DUF #9. During the relevant period, defendant Long was an Associate Warden, defendant Subia was Warden and defendant Garcia was Chief Deputy Warden.

---

[3] Plaintiff's undisputed facts only occasionally reference an exhibit. Plaintiff has attached 100 pages of exhibits to his motion for summary judgment.

On February 21, 2007, plaintiff was placed in Administrative Segregation (Ad. Seg.) after the ISU received confidential information regarding plaintiff's involvement in criminal activity. DUF #11. Plaintiff was placed in Ad. Seg. while the investigation continued. DUF #12. A CDC Form 114-D, Ad. Seg. Unit Placement Notice was prepared on February 21, 2007. DUF #13.

Plaintiff is a follower of the Wicca religion. AC at 5. The initial allegations involved plaintiff using other inmates who are Wiccan to provide security for the Wicca religious organization that resulted in a riot between several Wicca members and members of a Southern Hispanic gang. DUF #17. It was also alleged that the riot was a result of a drug debt owed to the Wicca organization at MCSP. DUF #31.

At various times in the investigation, defendants Hillard, Sauceda and Kowalczyk prepared confidential memos that involved information from confidential informants. DUF #17, 20, 25. Defendant Rutherford interviewed plaintiff regarding plaintiff's appeal to be removed from Ad. Seg. DUF #34. On March 14, 2007, the investigation into plaintiff concluded and a RVR was generated that accused plaintiff of using the Wicca organization as a cover to smuggle narcotics into MCSP, extort other inmates, and to use force and violence to collect debts. DUF #42. The RVR referenced six confidential memos. DUF #43. The RVR also noted that ISU had been monitoring plaintiff's telephone conversations and included conversations between plaintiff and civilians. DUF #49. To prepare for the RVR hearing, plaintiff was provided an Investigative Employee who interviewed witnesses on plaintiff's behalf. DUF #57. Plaintiff was also provided with transcripts of the telephone conversations. AC at 59-68.

The RVR hearing occurred on April 13, 2007, with defendant Chamberlin as the Senior Hearing Officer. DUF #62. Plaintiff was found guilty of creating conditions likely to threaten institutional security. DUF #74, AC at 69. Plaintiff was assessed a thirty day credit forfeiture and a ten day loss of Ad. Seg. yard privileges. DUF #76.

\\\\\

Defendants Long, Garcia and Subia were not involved in any of plaintiff's claims other than that they hold supervisor positions at MCSP. DUF #86, 92, 99.

Disputed Facts

Plaintiff generally argues that defendants conspired and falsified evidence and provided perjured testimony.

Analysis

Heck Bar

In Heck v. Humphrey, 512 U.S. 477 (1994), an Indiana state prisoner brought a civil rights action under § 1983 for damages. Claiming that state and county officials violated his constitutional rights, he sought damages for improprieties in the investigation leading to his arrest, for the destruction of evidence, and for conduct during his trial ("illegal and unlawful voice identification procedure"). Convicted on voluntary manslaughter charges, and serving a fifteen year term, plaintiff did not seek injunctive relief or release from custody. The United States Supreme Court affirmed the Court of Appeal's dismissal of the complaint and held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under 1983.

Heck, 512 U.S. at 486. The Court expressly held that a cause of action for damages under § 1983 concerning a criminal conviction or sentence cannot exist unless the conviction or sentence has been invalidated, expunged or reversed. Id.

The Supreme Court has extended the Heck bar to § 1983 suits that would negate prison disciplinary proceedings that affect good-time credits. Edwards v. Balisok, 520 U.S. 641, 648 (1997). A prisoner's challenge to a disciplinary hearing procedure is barred if judgment in

7

his favor would necessarily imply the invalidity of the resulting loss of good-time credits. Id. at 646. So, a "prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings ) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005).

As stated above, nearly all of plaintiff's allegations in this case involve the procedures and evidence used to obtain the guilty finding of his RVR. Plaintiff has not demonstrated that the guilty finding has been reversed, expunged or declared invalid. Therefore, the undersigned will not address plaintiff's allegations regarding the RVR hearing.

Due Process

While the undersigned will not address the RVR hearing and plaintiff's allegations concerning the evidence used, the undersigned will briefly discuss plaintiff's general due process claims to the extent that plaintiff could allege a claim regarding being placed in Ad. Seg. prior to the RVR hearing.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701 (1972). State statutes and prison regulations may grant prisoners liberty interests sufficient to invoke due process protections. Meachum v. Fano, 427 U.S. 215, 223-27, 96 S.Ct. 2532 (1976). However, the Supreme Court has significantly limited the instances in which due process can be invoked. Pursuant to Sandin v. Conner, 515 U.S. 472, 483, 115 S.Ct. 2293 (1995), a prisoner can show a liberty interest under the Due Process Clause of the Fourteenth Amendment only if he alleges a change in confinement that imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." Id. at 484.

\\\\\

In this case, plaintiff has failed to establish a liberty interest protected by the Constitution because he has not alleged, as he must under Sandin, facts related to the conditions or consequences of his placement in Ad. Seg. which show "the type of atypical, significant deprivation [that] might conceivably create a liberty interest." Id. at 486. For example, in Sandin, the Supreme Court considered three factors in determining whether the plaintiff possessed a liberty interest in avoiding disciplinary segregation: (1) the disciplinary versus discretionary nature of the segregation; (2) the restricted conditions of the prisoner's confinement and whether they amounted to a "major disruption in his environment" when compared to those shared by prisoners in the general population; and (3) the possibility of whether the prisoner's sentence was lengthened by his restricted custody. Id. at 486-87.

To establish a due process violation, plaintiff must first show the deprivation imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. Sandin, 515 U.S. at 483-84. Plaintiff has failed to allege any facts from which the court could find there were atypical and significant hardships imposed upon him as a result of defendants' actions. Plaintiff must allege "a dramatic departure from the basic conditions" of his confinement that would give rise to a liberty interest before he can claim a violation of due process. Id. at 485. See also Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000); May v. Bladwin, 109 F.3d 557, 565 (9th Cir. 1997). Plaintiff has set forth no facts demonstrating that his time in Ad. Seg. prior to the RVR finding was a major disruption. Therefore, summary judgment should be granted for defendants.

        RLUIPA & Free Exercise

Plaintiff argues that defendants' actions were due to plaintiff's involvement with the Wicca religion and violated RLUIPA and the First Amendment. However, plaintiff has offered no facts to support these claims.

The Religious Land Use and Institutionalized Persons Act of 2000 provides in part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1.

With regard to the First Amendment, "[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861 (1979). However, a prisoner's First Amendment rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir.1987). In particular, a prisoner's constitutional right to free exercise of religion must be balanced against the state's right to limit First Amendment freedoms in order to attain valid penological objectives such as rehabilitation of prisoners, deterrence of crime, and preservation of institutional security. See O'Lone v. Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400 (1987). "Regulations that impinge on an inmate's constitutional rights will be upheld only if they are reasonably related to legitimate penological interests." Henderson v. Terhune, 379 F.3d 709, 712 (9th Cir.2004).

In the instant case, plaintiff has offered no facts that demonstrate his ability to practice or exercise his religion was burdened. There are no allegations that the manner in which plaintiff practices his religion was burdened by anybody, either prior or during his time in Ad. Seg. Plaintiff concludes that the sole reason he was disciplined was because of his Wicca beliefs and that was the reason defendants conspired and fabricated evidence. In addition to setting forth no evidence in support of this allegation, this fails to state a claim under RLUIPA or the First Amendment. Therefore, summary judgment should be granted regarding these claims.

### Conspiracy

Plaintiff also alleges that all the defendants were part of a conspiracy to find

plaintiff guilty of the RVR due to his religious beliefs.

A conspiracy claim brought under section 1983 requires proof of " 'an agreement or meeting of the minds to violate constitutional rights,' " Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.' " Franklin, 312 F.3 d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

Plaintiff has produced no evidence of an agreement between defendants to violate his constitutional rights. Rather, he concludes that a conspiracy was in effect because he was found guilty of the RVR. Plaintiff's conspiracy allegations are speculative at best with no evidence in support. These bare allegations will not withstand a motion for summary judgment.

Miscellaneous Claims

Plaintiff's complaint sets forth a long list of claims such as an Eighth Amendment claim, Equal Protection, retaliation, property theft, retaliation and denial of an inmate grievance. There is almost no factual support for any of these claims. Plaintiff merely states his RVR finding violated the Eighth Amendment, Equal Protection and was in retaliation. There is no factual support whatsoever for an Eighth Amendment claim and plaintiff merely states that an Equal Protection claim exists because he is part of the Wicca religion. Summary judgment should be granted as these claims have no factual support. Plaintiff states that the RVR finding was in retaliation for the filing of a grievance against one of the defendants and because of pending court cases. However, plaintiff has never provided any other information about the grievance he allegedly filed or the pending court cases. In addition, plaintiff has provided no support for his allegations that the motivating factor for the RVR was retaliation for grievances

1  or pending court cases.  This claim should also be dismissed.

2  Plaintiff also alleges in his complaint that one of the defendants took an inventory
3  of plaintiff's religious property then illegally took it.  There is very little additional information in
4  support of this claim.

5  However, plaintiff is informed that the United States Supreme Court has held that
6  "an unauthorized intentional deprivation of property by a state employee does not constitute a
7  violation of the procedural requirements of the Due Process Clause of the Fourteenth
8  Amendment if a meaningful post-deprivation remedy for the loss is available." Hudson v.
9  Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194 (1984); Taylor v. Knapp, 871 F.2d 803, 805 (9th
10 Cir.1989) ("[i]n Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908 (1981),[4] the Court held that
11 where a deprivation of property resulted from the unpredictable negligent acts of state agents, the
12 availability of an adequate state postdeprivation remedy satisfied the requirement of due
13 process.")  Thus, where the state provides a meaningful postdeprivation remedy, only authorized,
14 intentional deprivations constitute actionable violations of the Due Process Clause.  An
15 authorized deprivation is one carried out pursuant to established state procedures, regulations, or
16 statutes.  Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir.1985).  The California Legislature
17 has provided a remedy for tort claims against public officials in the California Government Code,
18 §§ 900, et seq .  Therefore, this claim should be denied.

19 With respect to plaintiff's claim concerning denial of grievances, plaintiff is
20 informed that prisoners do not have a "separate constitutional entitlement to a specific prison
21 grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), citing Mann v.
22 Adams, 855 F.2d 639, 640 (9th Cir. 1988).  Even the nonexistence of, or the failure of prison
23 officials to properly implement, an administrative appeals process within the prison system does
24 not raise constitutional concerns.  Mann v. Adams, 855 F.2d at 640.  See also, Buckley v.

---

[4] Overruled on another ground by Daniels v. Williams, 474 U.S. 327, 330-331, 106 S.Ct. 662, 664 (1986).

Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill.1982) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Summary judgment should also be granted as to this claim.

Qualified Immunity

Because the court has found that the conduct alleged by plaintiff does not state a constitutional deprivation, the court need not address defendants' argument for qualified immunity.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's April 6, 2009, motion for summary judgment (Doc. 32) be denied;

2. Defendants' December 28, 2009, motion for summary judgment (Doc. 59), be granted and this case closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 06/28/2010

/s/ Gregory G. Hollows

_____
UNITED STATES MAGISTRATE JUDGE

GGH: AB
rous1107.sj